IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

v.   CASE NO. 5:03-cr-00047-MCR/AK

MICHAEL J. HARRINGTON,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 135, Motion to Vacate under 28 U.S.C. § 2255, by Michael J. Harrington. The Government has filed a response, Doc. 141, and the time for filing a reply has passed without further argument from Defendant. This cause is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the motion to vacate be denied.

## BACKGROUND

The defendant, Michael J. Harrington, was indicted for conspiracy to manufacture, distribute, and possess with intent to distribute more than 50 grams of methamphetamine. Doc. 1. Subsequently, the Government filed an Information and Notice of Prior Convictions, advising Defendant that because he had a prior felony drug conviction, he faced a sentence of not less than 10 years and not more than life imprisonment. Doc. 37.

On December 11, 2003, Defendant entered a change of plea. Docs. 56, 59, & 60. During the plea colloquy, Defendant acknowledged his right to persist in a plea of not guilty and to have

*Page 2 of 14*

a jury determine his guilt or innocence beyond a reasonable doubt, his right to call and cross-examine witnesses, his right to remain silent, and his right against self-incrimination. Doc. 105 at 14 & 18. He also acknowledged that he was waiving all defenses to the charges against him and his right to contest his innocence. *Id*. at 14-15. Defendant further advised the Court that he understood that he faced a 10-year minimum mandatory sentence and that he had "not been promised anything." *Id*. at 21-22 & 40. Defendant told the Court that he had read the Plea Agreement and the Factual Basis and that he agreed with them with one exception, which was explained by Defendant's counsel, Christopher Patterson:

> Your Honor, if I could interject, Mr. Harrington also takes issue with the actual drug weights; and, while we have signed the factual basis and did so in good faith, we would request the court–or I can do it for the court–annotate that it should read more than 50 grams of methamphetamine to satisfy the indictment to which he is pleading. But he takes issue–he thinks that that might be less or more.
>
> I have advised Mr. Harrington that there is a risk of that,[1] and that we would take that up in our debriefing sessions with the government officials....

*Id*. at 41-44. The Factual Basis was therefore amended to read that Defendant "is responsible for more than 50 grams of methamphetamine for his role in this conspiracy," rather than being responsible for "between 350 and 500 grams of methamphetamine...." Doc. 59. When the Court later reiterated that with the change in the Factual Basis, the Government would not be limited at sentencing to any drug weights, Defendant indicated his understanding. Doc. 105 at 45-46. Upon questioning from the Court, Mr. Patterson certified that he had reviewed the Plea

---

[1] The Court had previously explained to one of the co-defendants "that at the time of sentencing, if there is evidence to support a finding that you actually were involved in a greater amount, then the sentence could reflect accordingly[.]" *Id*. at 37.

Agreement in detail with Defendant and that he "fel[t] and believe[d] that [he] underst[ood] the consequences of entering a plea based on his...respective agreement[.]" *Id*. at 48-49. The Plea Agreement specifically stated that the Court would "make the final determination of facts as to any sentencing issue" and that the Court was "not limited to consideration of the facts provided by" either Defendant or the Government. Doc. 60. Defendant concluded by informing the Court that he had no "objection whatsoever to the way [Mr. Patterson had] handled [his] case," and that he understood that the Court had the authority to depart from any Guidelines range with a "heavier sentence, and sometimes with a more lenient sentence[.]" *Id*. at 54-57. The Court then determined:

> At this time I do find that each of you is alert and that you're intelligent; you understand the nature of the charges that you face; and I find that you also appreciate the consequences of entering a guilty plea....
>
> I find that the facts which the government is prepared to prove, and those facts that you have admitted under oath as being true are sufficient to support your plea of guilty.
>
> I also find that each of you is fully aware of the effect of the sentencing guidelines upon your case. You understand how they work; that you have been given the opportunity to ask any questions about how they might apply to your case; that you understand the effect they may have upon your case, and that you do understand the possible sentence or punishment that may be imposed....
>
> I further find that your decision to enter a plea of guilty is freely and voluntarily made, and that you have had the advice and assistance of an attorney with whom...you are well pleased.

*Id*. at 58.

A Presentence Report was prepared,[2] and Mr. Patterson filed objections on Defendant's

---

[2]The Presentence Report used by the undersigned in drafting this R&R was provided by Pretrial Services as a courtesy and is unsigned. Nevertheless, it appears to coincide with the

behalf, contesting the drug weights attributable to him and to an enhancement for possession of a firearm in connection with drug activities. Presentence Report at 20-22.  On March 10, 2004, Defendant appeared for sentencing, and after hearing extensive testimony, the Court held:

> As to the objection regarding drug weight, I do overrule that objection.  I recall at the plea...hearing...that [the Government] made it clear that [it] would not be limited...at sentencing despite Mr. Harrington's changes on the factual basis to the plea....
>
> I find that the evidence that was introduced here this morning clearly shows that there was drug weight in an amount between 115 and 500 grams, if not in excess of 500 grams, but certainly within that range of 150 to 500.  There was ample evidence of that presented this morning through the testimony of the witnesses, which I do find to be credible.  So the objection as to drug weight is overruled and the base offense level will be 34.[3]
>
> As to the objection regarding the weapon...it was abundantly clear from the evidence and the testimony that the firearm, both the pistol as well as the rifle, but in particular the pistol, I think every witness who testified here today who was present in Mr. Harrington's home testified that they observed that pistol on the table in and around the methamphetamine and certainly around the area where the methamphetamine was cooked, and one witness even said it was on the table where the methamphetamine was cooked.  There has been no showing that it was improbable that there was a connection between the weapons and drugs and I don't find Mr. Harrington's testimony credible in that regard regarding his intention was for those weapons as far as shooting coons and what have you.

* * *

---

Government's representations as to its contents.  *See* Doc. 141 at 4.

    [3]The PSR had set Defendant's Base Offense Level at 32, attributing "at least 677.4 grams of a mixture and substance containing methamphetamine" to Defendant.  PSR at 7.  *See* U.S. Sentencing Guidelines Manual § 2D1.1(c)(4) (2003).  In placing Defendant's Base Offense Level at 34, the Court obviously looked to the "actual" amounts of methamphetamine to which the witnesses testified.  *See id*. at § 2D1.1(c)(3) (Base Offense Level 34 applies if "at least 150 G but less than 500 G of Methamphetamine (actual)); *see also id*. at § 2D1.1(c), n.(B) ("Methamphetamine (actual)" refers to "weight of the controlled substance, itself, contained in the mixture or substance"; when there is mixture or substance containing methamphetamine, use offense level determined by entire weight of mixture or substance or offense level determined by weight of methamphetamine "whichever is greater").

*Case No: 5:03-cr-00047-MCR/AK*

> In summary, there is no question in the Court's mind that the firearms were present in the home. They were present and around the methamphetamine and the precursor agents to the methamphetamine around the area around where the methamphetamine was manufactured. And I do not find any evidence to show that it was improbable that there was any connection between the weapons and the drugs. So the objection will be overruled and that two-point adjustment will be made.
>
> Now, as to the matter of acceptance, I had a completely open mind when I came in here regarding the matter of Mr. Harrington's acceptance, and I was certainly prepared to hear what he had to say....But now that you have taken the stand, I simply can not give you a reduction for acceptance. It is clear that in your mind that you are simply guilty for possession of methamphetamine. You don't accept any responsibility for the manufacture, whatsoever, and accuse those who have testified otherwise of being liars. And as to the matter of distribution, you wouldn't even accept full responsibility for that. Your testimony was something along the lines of that you would give the methamphetamine away on occasion, but there was certainly no indication from your testimony that you accepted responsibility for intentionally distributing that methamphetamine and you were very clear that you did so without any intent of gaining or deriving any profit from it and your testimony to me suggests that you were trying to remove yourself as far away from that claim of distribution and also manufacturing as you could. And so...the government's objection will be sustained and...there will be on reduction, no points given for the acceptance.

Doc. 110 at 85-88. With a Base Offense Level of 34 plus the two-point adjustment for the firearms and no adjustment for acceptance of responsibility, Defendant's Total Offense Level was 36. *Id*. at 89-90. Given his criminal history of Category I, Defendant's Guidelines range was 188-235 months.[4] *Id*. The Court imposed a sentence of 200 months imprisonment on Defendant, a sentence "imposed at the mid-point of the guideline range due to the lack of the aggravating and mitigating circumstances not already considered by the Court [and] in recognition of the minimum mandatory sentence required by statute." *Id*. at 92; Doc. 88. The

---

[4]The PSR set Defendant's Total Offense Level at 34, with a Guidelines range of 151-188 months. PSR at 7-8 & 16.

Court indicated, however, that if it could have sentenced Defendant to a higher sentence, it would have. *Id*. at 91.

Defendant appealed, raising only one ground: that the Court "plainly erred during his change-of-plea hearing when it failed to ensure his guilty plea was free from coercion and neglected to inform him he could testify on his own behalf and present evidence if he chose to proceed to trial." Doc. 130 at 2. On March 31, 2005, the Eleventh Circuit rejected this argument, finding:

> Viewing the record as a whole...there is no indication Harrington's plea was not voluntarily made or his substantial rights were affected. The plea agreement, factual basis, and plea colloquy reveal Harrington was not promised anything in exchange for his plea. The record further reveals Harrington understood he could choose to proceed to trial and retain the constitutional and legal rights he would waive if he elected to plead guilty. Given the court (1) notified Harrington he could persist in his not-guilty plea; (2) ensured there were no other promises or agreements that induced Harrington to plead guilty; and (3) informed him of most of his Rule 11(b)(1)(E) rights, Harrington failed to demonstrate the court did not address adequately the Rule 11 core concerns to such an extent his substantial rights were affected. Nor has Harrington carried his burden of showing that, but for the court's errors, he probably would not have pled guilty.

*Id*. at 4 (citation omitted).

The instant motion to vacate ensued. On this occasion, Defendant raises three claims for relief. Two of the claims raise *Blakely/Booker* errors, while the third raises the issue of counsel's effectiveness.

## DISCUSSION

1. *Blakely/Booker*.

To the extent that Defendant claims that *Blakely/Booker* error is structural, "thereby making such error per se retroactive including to matters on collateral review," Doc. 135, Mem.

Case 5:03-cr-00047-MCR-AK   Document 144   Filed 08/24/07   Page 7 of 14

Page 7 of 14

Case 5:03-cr-00047-MCR-AK   Document 144   Filed 08/24/07   Page 7 of 14

Page 7 of 14

at 19, the argument is without merit. *United States v. Pritchett*, 135 Fed. Appx. 216, 217-218 (11th Cir. 2005) (refusing to adopt dissent in *United States v. Rodriguez*, 406 F.3d 1261 (11th Cir. 2005)); *United States v. Ingraham*, 130 Fed. Appx. 395, 396 n.1 (11th Cir. 2005) (although not explicitly address in *Rodriquez* opinion, "it is clear that this Court has rejected the notion that *Booker* constitutional error is structural"); *see also Varela v. United States*, 400 F.3d 864, 868 (11th Cir. 2005) (*Booker* not retroactively applicable to cases on collateral review, as "*Booker*'s constitutional rule falls squarely under the category of new rules of criminal procedure that do not apply retroactively to § 2255 cases on collateral review").

Further, because Defendant was sentenced pre-*Booker*, his sentence is not reviewed for reasonableness based on the factors set forth in 18 U.S.C. § 3553(a). *United States v. Cardenas*, 2007 WL 2119918, at *2 (11th Cir. July 25, 2007).[5]

To the extent that Defendant attacks his sentence based on the enhancement for the prior felony drug conviction, it is likewise without merit. *See United States v. Shelton*, 400 F.3d 1325, 1329 (11th Cir. 2005) (district court does not err by relying on prior convictions to enhance defendant's sentence).

Though Defendant contested at sentencing, the amount of drugs attributable to him, he did not raise what was then a *Blakely* issue. Indeed, at the time of sentencing, *Apprendi* controlled and had been interpreted by this circuit as having no applicability to the Sentencing

---

[5]Even so, the Court considered the relevant statutory factors and found that the sentence it imposed met "the general goals of punishment also act[ed] as a general and specific deterrence for others who might engage in similar conduct." Doc. 110 at 92. In all likelihood, this satisfies *Booker*. *See United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005) (acknowledgment by district court that it has considered defendant's arguments and § 3553(a) factors is sufficient for *Booker* purposes).

Guidelines. *United States v. Sanchez*, 269 F.3d 1250, 1262 (11th Cir. 2001). Even after *Blakely* was decided, the Eleventh Circuit found it inapplicable to the Sentencing Guidelines and specifically directed district courts to "continue to sentence pursuant to the Guidelines until such time as the Supreme Court rules on this issue." *United States v. Reese*, 382 F.3d 1308, 1312, 1312 n.2 (11th Cir. 2004). Thus, a straight-up *Blakely* argument would have been found without merit, not only because of the state of the law at the time but also because of the language of the Plea Agreement, which left to the Court the issue of the "final determination of facts as to any sentencing issue," a matter which was thoroughly explored with Defendant.

Even if Defendant has raised the issue with the Eleventh Circuit, he would have gained no relief, for that court, in the most generous posture possible, *cf. United States v. Duncan*, 400 F.3d 1297, 1299 n.1 (11th Cir. 2005) (failure to raise *Apprendi*-type argument in initial brief constitutes abandonment of *Booker* issue), would only have considered a *Booker* argument not raised in the district court under a plain error standard of review, which Defendant could not have prevailed on. *Duncan*, 400 F.3d at 1299; *Shelton*, 400 F.3d at 1328. In particular, he could not have shown that his substantial rights were affected, for the "error that was committed in pre-*Booker* sentencing...is not that there were extra-verdict enhancements–enhancements based on facts found by the judge that were not admitted by the defendant or established by the jury verdict–that led to an increase in the defendant's sentence. The error is that there were extra-verdict enhancements used in a mandatory guidelines system." *Rodriquez*, 406 F.3d at 1299-1300. "The same extra-verdict enhancement provisions applied after *Booker* as before." *Id*. at 1300; *see also United States v. Smith*, 480 F.3d 1277, 1281 (11th Cir. 2007) (when district court applies Guidelines in advisory manner, *Booker* is not offended when court makes additional

factual findings beyond defendant's admissions under preponderance of evidence standard). Thus, even if the Court had applied the Guidelines in this case in an advisory fashion, there is not a reasonable probability that the outcome of the sentencing would have been different, i.e., more favorable to Defendant. *Id*. at 1301. Indeed, if anything, it appears that "it is equally plausible that the error worked in favor of the defense...." *Id*. at 1300.

In short, none of Defendant's *Booker* arguments are well taken.

2. Ineffective assistance of counsel.

Because Defendant's other claim involves ineffective assistance of counsel, a review of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no

competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*. Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

Defendant claims that counsel failed to advise him "that he had an express 6th Amendment Right to require the government to prove, beyond a reasonable doubt, each and every factor and component that could or would affect the severity of defendant's punishment." Doc. 135, Mem. at 15. He also maintains that Mr. Patterson failed to advise him that he had the "right to attack his sentence on direct appeal and collateral attack and that the rights to such challenges might be foreclosed by language in the very plea agreement the attorney was encouraging defendant to sign." *Id*. at 15-16. He further argues that counsel "misled" him as to his potential sentence and the rights "that could be waived in the plea agreement" and that his plea was not otherwise knowing and voluntary. *Id*. at 16-18.

Any claim that his plea was not knowing and voluntary was rejected by the Eleventh Circuit on direct appeal and will not be reconsidered here. *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000), *cert*. *denied*, 531 U.S. 1131 (2001). Furthermore, the record plainly

refutes Defendant's other claims. In an early letter to Defendant, counsel told him in the first sentence that the burden was on the Government to "prove guilt beyond a reasonable doubt." Doc. 141, Ex. 2B. A week later, Mr. Patterson sent Defendant another letter reiterating that the Government "must prove the defendant guilty beyond a reasonable doubt." *Id*. at Ex. 2D. After the Government filed its notice of enhancement, he forwarded a copy to Defendant and explained that he now faced "a penalty range, if convicted, of ten (10) years to Life." *Id*. at 2E. Shortly thereafter, he advised Defendant that he must decide whether he wanted to testify in his own behalf. *Id*. at 2G. A few days later, counsel sent Defendant a letter confirming "the discussions we had today regard[ing] your 'last chance' to enter a plea in this matter." *Id*. at 2I. In that letter, counsel stated:

> We discussed how, if convicted, the Government will not do anything to assist you in a subsequent sentence reduction. We discussed how your three co-defendants will enter pleas and testify against you, as well as other persons such as Ferrell English. We also discussed how, if convicted, your sentence would be at least 10 years to life. I think a more realistic sentence would be somewhere from at least 135 months upwards, based upon our discussions about the Sentencing Guidelines. We also discussed how the firearms would be calculated in any potential sentencing.

*Id*. Finally, on the day before the plea, counsel hand delivered a letter to Defendant explaining that "[b]efore entering a plea to federal criminal charges, the Court must be satisfied that your plea is freely and voluntarily entered, and that there are sufficient facts to support the plea you enter." *Id*. At 2J. He then told Defendant that he had the right (1) to a jury trial in which his guilt or innocence would be determined, (2) to have the assistance of counsel at trial, (3) against self-incrimination, (4) to cross-examine witnesses and to compel the attendance of witnesses, and (5) to persist in a plea of not guilty "which means the Government would then have the

burden of proving your guilt to the jury, by the evidence, by a standard of proof known as 'beyond a reasonable doubt.'" *Id*. He further advised Defendant that if he pled guilty, he would "give up the right to appeal the question of your guilt or innocence," but that he could appeal "the sentence that might be imposed." *Id*. Mr. Patterson also explained that if he pled guilty, the Court would advise him of the possible penalties in this case and confirmed that he and Defendant had discussed the Sentencing Guidelines, "how they work, and how they may affect your case." *Id*. He reminded Defendant that his sentence could "only be determined after the probation office completes a presentence report....Only then can a range of sentencing be determined from the guidelines." *Id*.

Though the Court is certain that the attorneys who routinely represent criminal defendants in this Court review and explain pertinent trial, plea, and sentencing issues with their clients, quite frankly, Mr. Patterson more thoroughly memorialized his discussions with Defendant than the undersigned has previously seen, and his letters refute every allegation of ineffectiveness. If more attorneys took the time–and the Court knows the time constraints under which they work–to do what Mr. Patterson did in this case, in some form or another (for example, a simple checklist or statement signed and dated by the client establishing that counsel reviewed the relevant constitutional and statutory issues), would greatly aid this Court in disposing of claims of ineffectiveness and would save defense and Government counsel and the Court a tremendous amount of time and resources.

This claim is also without merit.

## **CONCLUSION**

As none of Defendant's claims have merit, the motion to vacate should be denied.

*Case No: 5:03-cr-00047-MCR/AK*

Accordingly, it is respectfully **RECOMMENDED** that the motion to vacate, Doc. 135, be

**DENIED**.

   **IN CHAMBERS** at Gainesville, Florida, this  **24th**  day of August, 2007.


            *s/ A. KORNBLUM*
            **ALLAN KORNBLUM**
            **UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

  A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.